The Honorable Jim Holt State Senator 2835 South 56th Street Springdale, AR 72762-0844
Dear Senator Holt:
I am writing in response to your request for an opinion on several questions concerning Senate Bill 206 which you are currently sponsoring in the 85th General Assembly. The bill proposes to enact the "Arkansas Taxpayer and Citizen Protection Act," with the stated purpose "to require all public agencies within this state to cooperate with federal immigration authorities and to discourage illegal immigration." See
Section 2. The section relevant to your questions establishes requirements for verifying the immigration status of applicants for public benefits.[1] Section 5 would amend Arkansas Code Title 20, Chapter 1 to add a new section, A.C.A. § 20-1-101, which states in part as follows:
20-1-101. Verification of immigration status for public benefits.
 (a) All agencies of the state and all political subdivisions of the state, including cities, counties, towns, and local governments responsible for the administration of state and local public benefits that are not federally mandated shall:
(1) Verify the identity of each applicant for benefits;
(2) Verify the eligibility of each applicant for benefits;
 (3) Provide any agency or political subdivision of the state with information necessary to verify the immigration status of any applicant for benefits;
 (4) Refuse to accept any identification card, including a driver's license, issued by any state to establish identity or to determine eligibility for benefits if the issuing authority has not verified the immigration status of the applicant; and
 (5)(A) Require all employees of the agency or political subdivision to report any violation of federal immigration law by an applicant for benefits that is discovered by the employee to federal immigration authorities. [Emphasis added.]
You have presented the following questions regarding this provision:
 1. What "state and local public benefits that are not federally mandated" (page 4, lines 24-27 of Senate Bill 206) in the State of Arkansas would be affected by Senate Bill 206?
 2. Would Senate Bill 206 affect only benefits found in Title 20 of the Arkansas Code?
 3. If the answer to the above question is `no,' what benefits outside of Title 20 would be affected by Senate Bill 206?
 4. Would Senate Bill 206 affect emergency medical treatment, including prenatal care, which is currently covered by the Emergency Medical Treatment and Active Labor Act of 1986 (EMTALA), 42 U.S.C. 1395dd? It is my understanding that emergency medical treatment would not be affected.
RESPONSE
I am unable to definitively opine in response to these questions, each of which essentially requires that I attempt to interpret the phrase "state and local public benefits that are not federally mandated" which your bill does not define. We know that certain benefits must be provided to so-called "illegal immigrants," as they are referred to in this bill. (Section 2 (b)). The United States Supreme Court has held for instance that the State cannot deny a public education to undocumented school-age children. Plyler v. Doe, 457 U.S. 202 (1982). And as recognized by your fourth question, federal law mandates that an illegal immigrant receive emergency medical treatment.[2] Presumably these, and any other federally-mandated benefits, would be unaffected by your bill.
A determination regarding non-federally mandated benefits depends, however, upon the meaning of "state and local public benefits that are not federally mandated," as contemplated by SB 206. This phrase is undefined in your bill. As an executive branch official, I am of course unable to supply a definition of a term that the legislature has not defined. I will note that one of my colleagues has opined that this language as used in a voter-approved measure similar to SB 206 applies to state and local welfare benefits that are restricted by federal law based on immigration status. See Op. Ariz. Att'y Gen. No. 104-010 (Nov. 12, 2004). The Arizona Attorney General considered various factors in interpreting the phrase, including the publicity surrounding the measure, the particular placement of the statute, and preemptive federal law. Applying general rules of statutory interpretation, he concluded that the voters intended to implement, with respect to welfare benefits, the eligibility requirements that apply to "state and local public benefits" as that phrase is defined in 8 U.S.C. § 1621 (c) (part of federal welfare reform legislation enacted in 1996 which declares undocumented immigrants generally ineligible for "state or local public benefits," as that term is defined).[3]
It was obviously necessary for the Attorney General to offer his opinion in that instance, given that the voters had approved the measure and state agencies would be implementing the new statute. He also had the benefit of the historical background of the voter initiative.
I am not in a position at this point to determine the effect of SB 206. If it is your intent to simply implement the federal eligibility requirements with respect to those benefits found in Title 20 that fall within the federal definition of "state and local public benefits" (see n. 4, supra), I believe you would be well-advised to clarify the bill to so state. Otherwise, I believe questions will remain regarding the substantive effect of this bill.[4]
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The bill also addresses identification requirements for voter registration; but your questions pertain only to the identification and reporting requirements with respect to public benefits. My discussion will therefore be limited to the relevant section in this regard.
[2] You have cited 42 U.S.C. § 1395dd in this regard, the so-called "patient dumping" law that requires hospitals to provide indigent patients with the same medical screening and treatment that would be provided to other patients, including those in "active labor," who present emergency medical conditions in the emergency room. See generally Holcomb v.Monahan, 30 F.3d 116 (11th Cir. 1994). See also in this regard42 U.S.C. § 1396b(v)(3) (requiring emergency medical assistance to aliens not lawfully admitted for permanent residence, and defining "emergency medical condition" to include "emergency labor and delivery.") Your reference to "prenatal care" in this regard prompts me to note that according to my reading, these provisions are not properly characterized as mandating prenatal care, except insofar as the patient is symptomatic or in medical crisis. Cf. Baber v. Hospital Corp. of America,977 F.2d 872 (4th Cir. 1992).
[3] "State or local benefit" is defined under 8 U.S.C. 1621 (c) (1) as:
 (A) any grant, contract, loan, professional license, or commercial license provided by an agency of a State or local government or by appropriated funds of a State or local government; and
 (B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government.
 The term "state or local public benefit" for purposes of the federal law does not apply to:
 (A) to any contract, professional license, or commercial license for a nonimmigrant whose visa for entry is related to such employment in the United States, or to a citizen of a freely associated state, if section 141 of the applicable compact of free association approved in Public Law 99-239 or 99-658 (or a successor provision) is in effect;
 (B) with respect to benefits for an alien who as a work authorized nonimmigrant or as an alien lawfully admitted for permanent residence under the Immigration and Nationality Act (8 U.S.C. § 1101 et seq.) qualified for such benefits and for whom the United States under reciprocal treaty agreements is required to pay benefits, as determined by the Secretary of State, after consultation with the Attorney General;
or
 (C) to the issuance of a professional license to, or the renewal of a professional license by, a foreign national not physically present in the United States.
[4] It should perhaps be noted in this regard that prenatal care is provided under the primarily federally funded State Children's Health Insurance Program ("SCHIP") "regardless of the mother's eligibilitystatus." Letter from Dennis G. Smith (Director of Center for Medicaid and State Operations) to State Health Officials (Nov. 12, 2004). See also42 CFR 457.10. As a non-federally mandated benefit, this program is potentially affected by SB 206.